[No. 21495-4-II. Division Two. October 3, 1997.]

THE STATE OF WASHINGTON, *Respondent,* v. COLLEEN B. ANDERSON, *Appellant.*

---

[35]I agree with the majority's treatment of the right-to-counsel and jury instruction issues.

*John L. Farra*, for appellant (appointed counsel for appeal).

*H. Steward Menefee, Prosecuting Attorney*, and *Jason S. Richards, Deputy*, for respondent.

HUNT, J. — Colleen Anderson appeals a superior court order finding her in violation of community supervision and imposing sanctions. She contends that the trial court improperly admitted hearsay evidence of a laboratory test result, and that the admissible evidence does not prove a violation. We affirm.

In August 1995, the Grays Harbor County Superior Court sentenced Anderson for residential burglary. The court put Anderson, a first-time offender, on 24 months of community supervision. The terms of supervision included a prohibition against possessing or consuming any controlled substance, with Anderson subject to urinalysis upon demand of her community corrections officer (CCO).

The State charged Anderson with violating community supervision after a urinalysis detected cocaine in her system. At the violation hearing, the State offered the test results through Anderson's CCO, David Phillips. Phillips testified that on August 13, 1996, Anderson came to his office for testing. Because no female CCO was available to monitor Anderson while she urinated, Phillips required her to leave her belongings outside the rest room, gave her a bottle and sent her in, and she came out "a few moments later" with urine in the bottle. She handed the bottle to Phillips. Phillips tagged and sealed the specimen and sent it to the Comprehensive Toxicology Service laboratory for testing. The lab report came back a few days later. Over defense hearsay objection, the State offered and the court admitted the lab report as exhibit 2. Then the State rested.

Anderson took the stand and testified that on the day she gave the specimen, she was taking eight different drugs that had been prescribed to treat an ulcer, asthma, and other medical conditions, plus two over-the-counter drugs for arthritis and allergy. She denied using cocaine. The implication was that one or more of the medications produced a positive reading for cocaine.

The State then recalled CCO Phillips, who testified that upon learning of Anderson's medications, he had faxed a list of them to the laboratory and asked if any would yield a positive test for cocaine. He received back a letter from James Heit, a lab supervisor, stating that none of the other drugs would test positive for cocaine. Over defense objection that Heit's letter was hearsay, the trial court admitted it as exhibit 3.

The trial court found Anderson guilty. On appeal, Anderson argues that the State should not be able to prove a community supervision violation using only hearsay, and that without the hearsay evidence, the State's proof was insufficient.

Hearsay and the various exceptions to hearsay are concepts found in the Rules of Evidence, Title VIII. But

the Evidence Rules explicitly do not apply in proceedings to grant or revoke probation. ER 1101(c)(3). Community supervision is the modern equivalent of probation. RCW 9.94A.030(7).

As Anderson points out, certain due process requirements attend a probation/community supervision violation hearing, including the right to confront live witnesses where there is reason to question the reliability of written reports offered in their place. *State v. Nelson*, 103 Wn.2d 760, 763-65, 697 P.2d 579 (1985); *State v. Badger*, 64 Wn. App. 904, 907-08, 827 P.2d 318 (1992). "*Unreliable* hearsay may not be the sole basis for revocation of probation." *Nelson*, 103 Wn.2d at 765.

■ But many hearsay documents are inherently reliable and may be admitted at a probation violation hearing in lieu of live testimony. In deciding whether good cause exists to admit hearsay evidence rather than allowing the defendant to confront a witness, the trial court should balance the document's reliability against the expense and difficulty of getting witnesses to court. *Nelson*, 103 Wn.2d at 765. Under this rationale, drug test results and an explanatory letter from the testing lab were held to be admissible in *United States v. Penn*, 721 F.2d 762 (11th Cir. 1983) (cited in *Nelson*, 103 Wn.2d at 764). *Accord United States v. Pratt*, 52 F.3d 671, *cert. denied*, 516 U.S. 881 (7th Cir. 1995); *United States v. Kindred*, 918 F.2d 485, 487 (5th Cir. 1990); *United States v. Bell*, 785 F.2d 640, 643 (8th Cir. 1986). *See also United States v. Miller*, 514 F.2d 41 (9th Cir. 1975) *cited in Badger*, 64 Wn. App. at 908 (state probation report and state criminal records held admissible in federal probation revocation hearing). *But see United States v. Martin*, 984 F.2d 308 (9th Cir. 1993).

■■ Here, the trial court found the test results and the lab supervisor's letter to be reliable documents and admitted them over hearsay objection. The judge observed that "expense factors . . . weigh against requiring the State to have the individual here," and reasoned that the

lab plays an independent and neutral role, i.e., it simply tests a sample and reports whether it contains any illicit drug. The court's determination is not clearly erroneous. *See Penn*, 721 F.2d at 766.

Anderson also challenges the sufficiency of the State's evidence. The standard of proof in a community supervision violation hearing is preponderance of the evidence. RCW 9.94A.200(c)(3). The State's case, summarized above, clearly meets this standard.

Affirmed.

SEINFELD and ARMSTRONG, JJ., concur.