IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | No. 71312-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| KENNETH W. WHITEMAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 2, 2015 |
| | ) | |

BECKER, J. — Violation of the conditions of a suspended sentence is punishable by revocation so long as the State informs the offender of the specific violations alleged and the facts that the State will rely on to prove the violations. The offender's right to due process is not violated merely because additional evidence supporting revocation comes out during testimony at a revocation hearing.

Appellant Kenneth Whiteman pleaded guilty to one count of child molestation in the first degree, one count of child molestation in the second degree, and one count of incest in the second degree. All three offenses were committed against his daughter over a period of years. On April 3, 2009, the trial court imposed a 130-month prison term. All but 12 months were suspended as permitted by the Special Sexual Offender Sentencing Alternative provisions of Washington's Sentencing Reform Act.

Whiteman's sentence imposed community custody conditions that took effect upon his release from jail. As a condition of community custody, Whiteman was required to "enter, make reasonable progress in, and successfully complete" a specialized program for sex offender treatment for five years. The sentence called for yearly compliance hearings.

Whiteman signed a treatment contract with Bellevue Community Services in April 2009. Among other things, the contract prohibited Whiteman from using computers that were not equipped with monitoring software, precluded him from using the Internet except within "written boundaries" approved by his treatment provider, and forbade him from using pornography in any form.

For the first four years, Whiteman was found to be in compliance at the annual hearings. No violations were noted.

Whiteman's wife walked in on him using her computer and masturbating when she came home from work on August 2, 2013. The computer did not have monitoring software, and Whiteman was viewing a pornographic web site featuring father-daughter sex. He quickly deleted the web site. Whiteman and his wife both reported this incident to community custody officer Margaret Alquist. Whiteman later admitted that on a daily basis, he had been using his wife's computer that did not have monitoring software.

Alquist prepared a formal notice alleging these two violations, which Whiteman admitted, and two others, which he did not admit. The other two violations were based on Whiteman's wife's statements that Whiteman had been using his unmonitored computer between August 2012 and May 2013 and that

2

he had visited a family member's place of employment in violation of a protective order.

The Notice of Violation included, under the heading "Supporting Evidence," detailed notes of Alquist's communications with Whiteman and his wife. A report on the results of a polygraph test was attached, along with progress reports from the treatment provider. The treatment provider was concerned that Whiteman was getting gratification from the images of father and daughter sex and was not using what he had learned in treatment about setting boundaries.

The notice contained Alquist's recommendation that the court schedule a noncompliance hearing. It stated that a community corrections officer would testify at the hearing. The notice concluded, "Revocation may be considered due to the extensive period of time that Mr. Whiteman has been in treatment and his inability to use the tools to intervene in the deviant behavior cycle that re-enacts his actual crime." Whiteman was taken into custody.

A compliance review hearing was held on November 4, 2013. At the hearing, the State elected to go forward only on the two violations that Whiteman had admitted. The prosecutor expressed distress that "someone who was afforded such an incredible opportunity, foregoing a presumptive sentence of 130 months, would violate in such a way." The prosecutor indicated reluctance to ask for revocation of the suspended sentence because, she said, the State had not been able to obtain a search warrant to do a forensic analysis of Whiteman's computer. As a sanction, the prosecutor recommended adding more conditions

and better supervision. The court ascertained that although the State was not asking for revocation, the State considered revocation to be a permissible sanction.

Whiteman's attorney asked the court not to revoke the suspended sentence and instead to impose the additional conditions recommended by the State and the treatment provider.

The court expressed concern about whether Whiteman would have support from his family if he was released back into treatment. Whiteman's wife was present, and the court solicited her views. She stated that she was in favor of revocation. She said a divorce was pending and Whiteman was no longer welcome to live in her home. "I want him to get healthy. But in six years, he's not getting healthy. He's not making any changes. He's not following through, you know. . . . I don't think he's ever going to be ready."

Alquist then testified that the treatment reports reflected that Whiteman had made only a minimal level of progress in treatment. She was concerned about Whiteman's effort to portray his recent viewing of the father-daughter pornography as an accident. She said she had visited the Whiteman home in the previous week to look at Mrs. Whiteman's computer and found its history had been erased. During that visit, Alquist discovered that Whiteman had used a Microsoft Surface to access "a variety of porn sites" at the end of August. She was therefore concerned about Whiteman's plan to find new employment by opening a computer business. She thought that it would be a trigger for him to

become reinvolved with pornography and that it would allow him to conceal his activity by use of his superior computer skills.

Whiteman made a statement to the court. First, he said that when he went to Alquist's office on August 28 and was arrested, he "signed permission slips for them giving them my okay to look on the computers anywhere they wanted to. I mean there was no issue there." He admitted that he had looked at "fantasy incestuous porn sites," and that he did not use the tools he had learned in treatment. "That was an error, and it's one that I do not intend to repeat again." Whiteman said that he had been "ashamed and very scared" when his wife caught him viewing pornography and that he had intended on his own to make a timely report of the incident to his treatment provider.

His wife followed up on this topic by informing the court that just a few days after reporting his viewing of the incest web site, Whiteman was already viewing pornography again on his Surface. "So even though he knew he was in big trouble, he's still accessing these sites. . . . I am fearful that something else is going to happen, and he's going to have another victim." Whiteman responded that he bought the Surface "to use at the business to keep business records on. And I did, yes, view pornography on it. But then I stopped doing that totally, because I realized that, you know, I had to stop someplace. So I stopped myself from doing it and got into the group and did what I was supposed to do."

The trial court decided to revoke Whiteman's suspended sentence. The court remarked that Whiteman's violation occurred despite his family's support. "And it's my judgment that even now there's some minimization going on in terms

of the amount of contact that's happened. . . And despite your family taking you back in, despite your wife giving you resources to try to correct your problems, you didn't do it." The court noted that the treatment program "cannot monitor someone who's computer-savvy 24 hours a day. It can't be done. I am revoking." The court entered an order of revocation on November 4, 2013.

Nine days later, Whiteman filed a motion for reconsideration "based on the unusual turn of events in the courtroom, where Mr. Whiteman's spouse unexpectedly turned on him and asked for revocation." The motion argued in part that Whiteman was not given adequate notice of the violations. "There was major surprise evidence presented at the hearing, starting with the wife's request for revocation. There was no notice of issues relating to the second computer." Whiteman pointed out that he had no previous violations in five years and had committed no new crime.

The trial court denied the request for reconsideration. Whiteman appeals. He contends that his right to due process was violated because the Notice of Violation did not apprise him that evidence about his viewing of pornography on the Surface would be used against him at the hearing.

The State contends that Whiteman failed to preserve the issue for appellate review because he did not object when Alquist referenced the Surface during the revocation hearing. According to the State, an objection raised in a motion for reconsideration is too late to preserve any alleged due process violation for appellate review. Br. of Respondent at 12-13, citing State v. Dahl, 139 Wn.2d 678, 687 n.2, 990 P.2d 396 (1999); State v. Nelson, 103 Wn.2d 760,

766, 697 P.2d 579 (1985); and State v. Robinson, 120 Wn. App. 294, 299-300, 85 P.3d 376, review denied, 152 Wn.2d 1031 (2004). However, in the cases cited by the State, there was no element of surprise; the appellant had every opportunity to review and react to the materials at the hearing. The State also asserts, without citing relevant authority, that the order of revocation was a final order that the court lacked authority to revise except as provided by CrR 7.8(b). The State did not make this argument below. Under the circumstances here, Whiteman's motion for reconsideration adequately preserved the issue he raises on appeal.

Under the Special Sexual Offender Sentencing Alternative provisions of Washington's Sentencing Reform Act, a trial court may revoke a suspended sentence at any time if it is reasonably satisfied that an offender violated a condition of his suspended sentence or failed to make satisfactory progress in treatment. RCW 9.94A.670(11)(a)-(b); Dahl, 139 Wn.2d at 683.

"Due process requires that the State inform the offender of the specific violations alleged and the facts that the State will rely on to prove those violations." Dahl, 139 Wn.2d at 685. Here, the State informed Whiteman that he was accused of failing to comply with his treatment conditions by viewing pornography on August 2, 2013, and of failing to comply with treatment by daily use of his wife's computer without monitoring software. The Notice of Violation set forth the facts the State intended to rely on. The unanticipated evidence that he was also using the Surface did not add significant weight to the facts the State planned to reply on.

Due process also requires "a statement by the court as to the evidence relied upon and the reasons for the revocation." Dahl, 139 Wn.2d at 683, citing Morrissey v. Brewer, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). Here, the order of revocation set forth the court's finding that Whiteman failed to make progress in his treatment program "by admitting to viewing pornography" and "by using his wife's computer without a monitoring device."

The court's statement of the evidence it relied on and the reasons for the revocation match the information provided in the Notice of Violation. The record of the hearing does not bear out Whiteman's argument that the evidence regarding the Surface amounted to a new violation. The record shows that the State and the court viewed the two admitted violations as compelling evidence that Whiteman was failing to make progress in treatment. Whiteman attempted to explain his viewing of the father-daughter pornographic web site as an accidental and isolated occurrence that he fully intended to disclose even before his wife walked in on him, but the court did not believe his explanation. And Whiteman's admitted daily use of his wife's unmonitored computer highlighted the difficulty of providing adequate community monitoring of someone with Whiteman's computer skills.

We conclude the State's Notice of Violation was adequate to inform Whiteman of the violations and evidence that formed the basis of the court's decision to revoke his suspended sentence. There was no due process violation.

Whiteman has filed a Statement of Additional Grounds for Review objecting to the trial court's consideration of testimony from another family

8

member who was present at the hearing.  We have not considered that testimony in reaching our decision.

Affirmed.

WE CONCUR: